Dariush G. Adli, Esq. (SBN: 204959)
  adli@adlilaw.com
Drew H. Sherman, Esq. (SBN: 237045)
  drew.sherman@adlilaw.com
ADLI LAW GROUP, P.C.
444 South Flower Street, Suite 3100
Los Angeles, California 90071
Telephone: 213-623-6546
Facsimile: 213-623-6554

Attorneys for Plaintiff, Trust Safe, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUST SAFE PAY, LLC, a Massachusetts limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>DYNAMIC DIET, LLC; KOSTAS VADOKLIS, an individual; VILMA VADKLIS, an individual, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 2:16-cv-7905<br><br>*The Honorable*<br><br>**COMPLAINT FOR DAMAGES** |

TRUST SAFE PAY, LLC, COMPLAINT FOR DAMAGES

Plaintiff, Trust Safe Pay, LLC, ("Plaintiff") complains and alleges the following claims against Defendants, Dynamic Diet, LLC ("DDL"), Kostas Vadoklis ("Kostas"), and Vilma Vadoklis ("Vilma") (DDL, Kostas, and Vilma collectively "Defendants").

## PARTIES

1. Plaintiff is a Massachusetts limited liability company with its principal place of business in Idaho.

2. Plaintiff is informed and believes, and thereon alleges that Kostas and Vilma are individuals residing in Nantucket, Massachusetts.

3. DDL is a corporation organized and existing under the laws of the State of Massachusetts, having a principle place of business at 7 West Creek Road, Nantucket, Massachusetts.

4. Plaintiff is ignorant of the true names of capacities of the third party defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these third party defendants by such fictitious names. Plaintiff will seek to amend this Counterclaim and Third Party Claim to allege such names and capacities as soon as they are ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously-named third party defendants are in some manner responsible, liable and/or obligated to Plaintiff in connection with the acts alleged herein. Wherever appearing in this Counterclaim and Third Party Claim, all references to Third Party Defendants in this action, and each of them, collectively and individually, named and unnamed, include fictitiously named third party defendants.

## JURISDICTION AND VENUE

5. This court has jurisdiction over these counterclaims and third party claims pursuant to 28 U.S.C. §§ 1331 and 1367.

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

1990.201

6. Venue is proper in the Court pursuant to 28 U.S.C. § 139(b)(2) as this is the district that was substantially affected by the Defendants' actions.

7. Plaintiff is informed and believes, and thereupon alleges that Defendants, and each of them, named and unnamed, conspired and agreed among themselves to the acts complained of herein and were, in doing the acts complained of herein, acting pursuant to said conspiracy, and that each of the Defendants sued herein is jointly and severally responsible and liable to Plaintiff for the damages alleged herein.

## GENERAL ALLEGATIONS

8. Plaintiff's principal, Evelina Juchneviciute ("Evelina"), owned an already existing and prosperous housecleaning business in 2007 when her first son was born. Needing assistance with the business, Evelina hired Vilma when Vilma offered to help.

9. Evelina and Vilma, and Evelina's partner and co-member of Plaintiff, Darius Kersulis ("Darius"), and Vilma's husband Kostas, became friends and between 2007 and 2014 Evelina and Vilma, and their significant others (Kostas), became very good friends where they would have dinners together regularly, attend holidays together, and go with each other to events and celebrations.

10. In or around 2009, Evelina and Darius began a business representing weight loss products. Evelina had struggled with her weight since she was young and had lost over 100 pounds to date. She has been an inspiration to others with weight and health issues and is held as an example for others to follow and is highly respected and valued in the weight loss support business community.

11. Evelina and Darius invested a lot of money, time, and hard work in their new venture achieving moderate success and sometimes-costly setbacks. However, Evelina and Darius began to possess the information as to which diet

1 plans worked better than others and what allowed people to lose the most weight
2 and to keep it off.

3     12.    In or around late 2011, Evelina and Darius created their own diet
4 program using supplements, original recipes that she created, food management, and
5 life style planning.

6     13.    Evelina and Darius have backgrounds in marketing (Darius was a
7 finalist at the 1998 Hewlett Packard Global Business challenge), business
8 management (started her first business as the age of 21), and Darius is self taught in
9 many complex computer programming languages. They right away started to create
10 an algorithm, using multiple, supporting websites, website layout structure, element
11 placement, color scheme, specific topic themes, tone of language, and specific
12 words and word combinations on Bing Ads, Google Adwords, and Facebook
13 platforms, that would maximize revenues and reduce advertising costs while
14 maintaining same high standards for the internet arm of her business. Evelina and
15 Darius tested many variables and engaged in an inordinate amount of research to
16 modify and hone the algorithm.

17     14.    Within one year, the algorithm reached a point where, though not
18 completely finished, it had a significant effect in generating substantially increased
19 revenues and lowered costs without negatively effecting quality for the Plaintiff.

20     15.    Evelina and Darius realized that the algorithm had a significant value to
21 Plaintiff's business as compared with the competition in the market in that the
22 algorithm generated substantially visitor intention accuracy, visitor time retention on
23 the websites, increased percentage of sales for any given visitor amount (new end
24 users to Plaintiff's websites) and new sales generated.

25     16.    After Evelina and Darius realized the value of her algorithm, they took
26 precautions to keep her algorithm secure.

27
28

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

17. Evelina and Darius ran this business out of her house's locked basement using a password protected computer which held the passwords to all the third party advertising accounts which held the secret words and word combinations that formed the algorithm.

18. In April 2012, Evelina and Darius took a vacation but needed someone to continue the work of packaging orders and shipping them to their customers.

19. Vilma volunteered to continue the work of packaging and shipping for Plaintiff while Evelina and Darius went on vacation.

20. Vilma was paid by Plaintiff for the work done while Evelina and Darius were on vacation.

21. In performing the work of packaging and shipping for Plaintiffs, Vilma would have necessarily seen the revenues generated, the costs of the business, the number of customers Plaintiff had and was acquiring daily, the location of Plaintiff's biggest customer base, and the profit margin realized by Plaintiff.

22. Plaintiff is informed and believes, and thereon alleges, that it was at that point during her temporary job with Plaintiff, working the packaging and shipping while Evelina and Darius were on vacation, that Vilma decided she, along with Kostas, would misappropriate the algorithm and all other proprietary information, which made Plaintiff a successful business, in order for Vilma and Kostas to start their own diet/supplement internet business and trade off of Evelina's Darius' sweat equity.

23. Plaintiff is informed and believes, and thereon alleges, that over the next 10 months, between April 2012 and January 2013, Vilma implemented a plan to carry out the above-mentioned misappropriation.

24. Plaintiff is informed and believes, and thereon alleges, that the plan carried out by Defendants, beginning in April 2012 as soon as Evelina and Darius returned from their vacation, was for Vilma to offer many times during that period

1  to babysit Evelina's and Darius' children so Evelina and Darius could go out by
2  themselves.  Vilma stated also the reason she wanted to always babysit Evelina's
3  and Darius' children was because Vilma could not get pregnant herself and she had
4  the urge to care for children.

5    25.    Given the amount of time that Evelina and Darius had spent with Vilma
6  and Kostas, they built up a trust in them and relied on Vilma's representations and
7  felt safe having Vilma and Kostas babysit their children.  As such, Evelina took
8  Vilma up on her numerous offers to babysit.

9    26.    While babysitting, Vilma had access to the locked basement, where
10 Plaintiff's computers were kept in order to get supplies, as needed, for watching the
11 children because she knew where the key hidden from her time working the
12 packaging and shipping while Evelina and Darius were on vacation.

13   27.    The password to the Plaintiff's computers could have been figured out
14 if someone was close with Evelina's and Darius' family and spent enough time with
15 the family, as Vilma and Kostas had been doing over a period of many years.

16   28.    Plaintiff is informed and believes, and thereon alleges, that, while
17 babysitting Evelina's and Darius' children, Vilma went down into the basement and
18 attempted to figure out the password to Plaintiff's computers by trying combinations
19 of numbers and/or letters until she got the password correct.

20   29.    Plaintiff is informed and believes, and thereon alleges, that Vilma did
21 eventually figure out the password to the Plaintiff's computers and then began to
22 copy, gather, and take as much information as she could to carry out the Defendants'
23 ultimate business plan to create a copycat business of Plaintiff's websites and
24 business system using the algorithm.

25   30.    Also during this same time period between April 2012 and January
26 2013, Kostas regularly called Darius representing that he was starting an online
27 electronic cigarette business and wanted to get pointers for starting and running an
28

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

1990.201

1 internet based business and how to drive higher visitor intention accuracy to a new
2 website.  Additionally, during this time period between April 2013 and January
3 2015, Vilma regularly called Evelina and on the pretense of caring about Evelina's
4 business would question how is the business doing and what solutions she
5 implementing to advance her business."

6       31.    At the beginning of January 2013, Evelina and Darius moved from
7 Nantucket to Idaho.  The Defendants remained in Nantucket.

8       32.    In April 2014 and July 2014 the Defendants purchased the domain
9 names to their copycat websites.

10       33.    Between January 2013 and January 2015, Defendants outsourced the
11 building of their copycat websites to a company in Lithuania and continues to
12 employ this company for ongoing work.

13       34.    In January 2015, Defendants incorporated DDL, and at this time,
14 Plaintiff noticed a new competitor that was bidding on the same keywords Plaintiff
15 used in its algorithms.

16       35.    As part of its due diligence, Plaintiff researched the owners of these
17 new competing websites, which were bidding on the same words as Plaintiff.

18       36.    In performing this due diligence, Plaintiff came to learn that the
19 Defendants were the owners of the new competing websites.

20       37.    Since January 2015, Plaintiff has monitored Defendants, and the
21 company to whom they outsourced their website build, for visits to Plaintiff's
22 websites, as well as the changes Defendants were making to their websites based on
23 Plaintiff's made changes on their websites.

24       38.    Since January 2015, through the present, Defendants and/or the website
25 build company has visited Plaintiff's website several times per week, sometimes
26 multiple times per day, accounting for hundreds of separate visits and tens of

27
28

thousands of page views.  Further, Defendants' websites would be changed in the exact ways Plaintiff would change its website.

39. The largest portion of Plaintiff's customers, dollars, and business is, and was, generated from California.

40. Since January 2015, when the Defendants launched their copycat websites and employed the misappropriated algorithms, the largest decline in Plaintiff's revenues has come from California.

41. Plaintiff is informed and believes, and thereon alleges, that the Defendants intended to misappropriate Plaintiff's biggest customer base, the customer base in California, by their copycat websites and the misappropriated algorithms.

## FIRST CAUSE OF ACTION
## COPYRIGHT INFRINGEMENT
### (Against All Defendants)

42. Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 39 above as though fully set forth herein.

43. Plaintiff is the assignee of three (3) applications for copyright registrations in works of visual art, which includes various web-pages of Plaintiff's websites, application numbers 1-3998164856; 1-3998164250; 1-4018230311 (the "Art").

44. Defendants have copied the original expressions contained in the Art without permission and used them in their websites which are distributed worldwide and displayed for the public.

45. Plaintiff is informed and believes, and thereon alleges, that Defendants used the original expressions contained in the Art with the pre-existing knowledge that such original expression was owned by Plaintiff.

46. Defendants knew or should have known that their conduct constituted copyright infringement by way of using Plaintiff's original expressions, or, at least recklessly disregarded the possibility.

47. Defendants' intentional infringing activities have continued and will continue to be to the detriment of Plaintiff, and loss and injury to Plaintiff's business in an amount not presently ascertainable, and threaten to increase such loss and injury, unless such activities are enjoined by this Court and Defendants are required to cease from using the original expressions on their websites.

48. Plaintiff is without adequate remedy at law to prevent the unlawful acts of Defendants herein set forth, and said acts of Defendants have resulted and will result in irreparable damage to Plaintiff unless Defendants' acts of infringement are enjoined by this Court.

49. By reason of the acts of Defendants alleged herein, Plaintiff has suffered actual damages in an amount to be proven at trial, but no less than $1,600,000.

50. Due to Defendants' acts as alleged above, Defendants, and each of them, have obtained profits they would not otherwise have realized but for their infringement of the Art.

51. Pursuant to the Copyright Act, Plaintiff is entitled to its actual damages and disgorgement of Defendants' profits attributable to Defendants' infringement of the designs in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
## CONTRIBUTORY INFRINGEMENT
### (Against All Defendants)

52. Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 49 above.

53. Defendants, and each of them, had reason to know that the Defendants were infringing Plaintiff's original expression by way of Vilma's and Kostas' position of control in DDL.

54. Defendants materially contributed induced the infringing activity by supplying the resources for the infringement and by directing the infringing activities of Defendants.

55. By reason of the acts of Defendants alleged herein, Plaintiff has suffered actual damages in an amount to be proven at trial, but no less than $1,600,000.

56. Due to Defendants' acts as alleged above, Defendants, and each of them, have obtained profits they would not otherwise have realized but for their contribution to the infringing activities.

57. Pursuant to the Copyright Act, Plaintiff is entitled to its actual damages and disgorgement of Defendants' profits attributable to Defendants' contributions to the infringement of the designs in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## VICARIOUS INFRINGEMENT
### (Against All Defendants)

58. Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 55 above.

59. Defendants, and each of them, controlled the Defendants' infringing activities by way of Vilma's and Kostas' position of control in DDL.

60. At any point Defendants could have stopped the infringing activities of Defendants by way of Vilma's and Kostas' position of control in DDL.

61. Due to Defendants' acts as alleged above, Defendants, and each of them, have obtained profits directly they would not otherwise have realized but for the infringing activities.

62. By reason of the acts of Defendants alleged herein, Plaintiff has suffered actual damages in an amount to be proven at trial, but in an amount no less $1,600,000.

63. Pursuant to the Copyright Act, Plaintiff is entitled to its actual damages and disgorgement of Defendants' profits attributable to Defendants' contributions to the infringement of the designs in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## Misappropriation of Trade Secrets
## Cal. Civ. Code §3426, et seq.
## (Against All Defendants)

64. Plaintiff repeats and re-alleges allegations 1 through 61 as set forth above as if set forth fully herein.

65. Plaintiff's algorithm is proprietary information not known to other businesses in the Plaintiff's industry that provides Plaintiff with a competitive advantage.

66. Plaintiff has kept the algorithms a secret from the public by locking it in a password-protected system in a room that is locked from the public.

67. Using the deception of wanting to babysit for Evelina's children, a position of trust to only do what was necessary to babysit, Defendants took the algorithm without permission in order to benefit from it unbeknownst to Plaintiff.

68. Plaintiff is informed and believes, and thereon alleges, that Defendants, as direct competitors of Plaintiff, have derived and received, and will continue to derive and receive, gains, profits and advantages from Defendants' misappropriation in an amount that is not presently known to Plaintiff, but no less than $1,600,000. By reason of Defendants' wrongful acts as alleged in this Complaint, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

69.  By their actions, Defendants have injured and violated the rights of Plaintiff and have irreparably injured Plaintiff, and such irreparable injury will continue unless Defendants are enjoined by this Court.

70.  Plaintiff is informed and believes, and thereon alleges that the aforesaid conduct of Defendants was with the intention and effect of causing Plaintiff loss and injury, in conscious disregard of Plaintiff's rights and interest, so as to justify an award of punitive damages.

## FIFTH CAUSE OF ACTION

### (Intentional Fraud Against Cross-Defendants)

71.  Plaintiff refers to and incorporates each allegation set forth in paragraphs 1-68 above as if fully set forth herein, and further alleges as follows:

72.  Defendants approached Plaintiff's President, Evelina, in person in April 2012 through January 2013 representing that Vilma wanted to babysit Evelina's children because she wanted to care for children.  Defendants also approached Darius over the phone between April 2012 to January 2013 and represented Defendants were starting an electronic cigarette internet based business.

73.  Plaintiff is informed and believes, and thereon alleges, that Defendants knew such representations were false when he made them because Defendants never started an electronic cigarette internet-based business and Defendants have not been around or cared about children since.

74.   Plaintiff was ignorant of the fact that Defendants' representations were false when he made them, and Plaintiff could not, in the exercise of reasonable diligence have discovered Defendants' secret intentions.

75.  It was only after Defendants were found to be copying Plaintiff's Art and visiting Plaintiff's websites daily that Plaintiff became aware of the deceit.

76. Plaintiff is informed and believes, and thereon alleges, that Defendants made such representations with the intent that Plaintiff would rely on them, and Plaintiff so reasonably relied.

77. Plaintiff was harmed by Defendants misrepresentations in that Plaintiff wound up losing revenues because the fraud allowed Defendants to misappropriate Plaintiff's trade secrets and confidential information and become direct competitors in the same, small niche market within the same particular advertising platform.

78. As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial, but not less than $1,600,000.

79. Plaintiff is informed and believes, and thereon alleges, that the aforesaid conduct of Defendants was part of an act of intentional deceit with the intention and effect of causing Plaintiff loss and injury, in conscious disregard of Plaintiff's rights and interest, so as to justify an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For actual damages of not less than $1,600,000, plus interest according to proof at trial.

2. For general and consequential damages of not less than $1,600,000, according to proof at trial;

3. For exemplary and punitive damages in an amount according to proof at time of trial

4. For attorney's fees according to proof;

5. For costs of suit incurred herein;

6. For an accounting;

7. For disgorgement of Defendants' profits of the amount determined to be due from Defendants as a result of such accounting and interest thereon at the legal rate;

8. For imposition of constructive trust for all sums found due and owing to Plaintiff;

9. For the appointment of a receiver to take possession of the constructive trust, and all books, reports, and records pertaining to the amounts owed to Plaintiff.

10. For interest on amounts due and owing;

11. For reasonable attorney's fees;

12. For costs of suit incurred; and

13. For such other relief the court deems proper.

ADLI LAW GROUP, P.C.

Dated: October 24, 2016       By: */s/ Dariush G. Adli*
　　　　　　　　　　　　　　　　　Dariush G. Adli, Esq.
　　　　　　　　　　　　　　　　　Drew H. Sherman, Esq.
　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　*Trust Safe Pay, LLC*

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Defendant demands a jury trial of any issues in this action so triable.

Respectfully Submitted,

DATED: October 24, 2016                    ADLI LAW GROUP PC

                                           BY:   /s/ Dariush G. Adli
                                                 Dariush Adli, Esq.
                                                 Drew H. Sherman, Esq.
                                                 *Attorneys for Plaintiff*
                                                 *Trust Safe Play, LLC*